# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-1861

IN RE: MILTON THOMAS

_____

MILTON THOMAS,
Appellant

v.

CITY OF PHILADELPHIA and THE SCHOOL DISTRICT OF PHILADELPHIA

_____

Appeal from the U.S. District Court, E.D. Pa.
Judge Joel H. Slomsky, No. 2:21-cv-01725

Before: BIBAS, PORTER, and BOVE, *Circuit Judges*
Argued Jan. 28, 2026; Decided Jun. 9, 2026
_____

OPINION OF THE COURT

BOVE, *Circuit Judge*. Milton Thomas has capably represented himself since 2004 in this roller coaster of a bankruptcy. In the third appeal to this Court arising out of those proceedings, Thomas argues that the Bankruptcy Court erred by denying his motion for civil contempt against the City of Philadelphia and a related party. He is correct.

1

After Thomas spent years working to resolve his debts, the Bankruptcy Court issued a discharge order. The finality of a discharge is one of the historic cornerstones of the consumer bankruptcy process. The City violated Thomas's discharge by seeking to collect on liens relating to one of his properties. We previously described those debt-collection efforts as a "dereliction." *Thomas v. City of Philadelphia*, 759 F. App'x 110, 112 (3d Cir. 2019).[1] The District Court also took a dim view. *See id.* at 111. These proceedings have not assuaged those concerns.

What makes this appeal a close call is that in 2013, years after the discharge, the Bankruptcy Court issued a *sua sponte* ruling relating to a separate property, which wrongly indicated that Thomas had failed to provide the City with constitutionally adequate notice of his bankruptcy plan. We have already held that the Bankruptcy Court's narrow alternative ruling is not entitled to preclusive effect with respect to the two different properties now at issue. *See Thomas v. City of Philadelphia*, 682 F. App'x 174, 177-78 (3d Cir. 2017). The City tells us nevertheless that it relied on the Bankruptcy Court's constitutional surplusage when initiating debt-collection litigation relating to those different properties in state court.

Civil contempt is not appropriate when there is an objective, fair ground supporting the violator's position. The City's arguments, however, do not clear that threshold based on the unique facts of this case. The Bankruptcy Court was wrong in 2013, and the City's attempts to suggest otherwise fail. In fact, the City had extensive actual notice of Thomas's

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

bankruptcy case, including notice of the confirmation hearing, the confirmation order, and the discharge order. In addition to actual notice, the City participated selectively by filing claims as a creditor but skipping key parts of the proceedings. The evidence of the City's actual notice is so strong that there was no reasonable basis for the City to argue that a due process violation excused compliance with the discharge. Tellingly, the City made no such argument until after the Bankruptcy Court's 2013 *sua sponte* ruling.

Just as significant to the contempt analysis as the City's actual notice, if not more so, is the fact that the City improperly tried to extend the 2013 ruling to different properties. We do not here suggest that civil contempt sanctions would be appropriate where a litigant reasonably relies on a judicial decision. But that is not what the City did. The City decided on its own that the Bankruptcy Court's narrow alternative reasoning applied to other properties too. In doing so, the City violated well-established law by resorting to a self-help violation of the discharge order years after it became final. *See, e.g.*, *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3d Cir. 1982) (en banc).

Because of the City's actual notice and inappropriate unilateral extension of the 2013 ruling, which was wrong as a matter of law, civil contempt sanctions are warranted. Accordingly, we will affirm in part, vacate in part, and remand for evaluation of the scope of the City's violation and calculation of damages based on the City's contempt.

## I.

These proceedings have spanned more than two decades. Below we summarize the pertinent facts relating to

3

(A) the 2005 confirmation of Thomas's bankruptcy plan and 2009 discharge order; (B) Thomas's efforts to rely on the discharge to ward off post-discharge debt-collection efforts relating to a property not at issue in this appeal, which resulted in the Bankruptcy Court's 2013 *sua sponte* ruling that the City did not receive constitutionally adequate notice of the confirmation; (C) similar debt-collection litigation relating to the two properties at issue in this appeal, which included a remand from this Court on the basis that the 2013 ruling was not preclusive; (D) the District Court's finding on remand that the City had violated the discharge order, which resulted in a second remand from this Court because only the Bankruptcy Court had jurisdiction to address Thomas's contempt allegations in the first instance; and (E) the contempt proceedings in the Bankruptcy Court that led us to this point.

**A.**

Thomas commenced the Chapter 13 bankruptcy process in January 2004. His initial filings included a proposed bankruptcy plan as well as schedules disclosing liens on three properties, which we will reference based on the numbers associated with the properties' addresses: the 1251 Property, the 1618 Property, and the 1620 Property. For each Property, Thomas identified the City as a creditor with a claim secured by the property in question.

Generally speaking, secured liens like the ones Thomas disclosed in 2004 are not affected by a Chapter 13 bankruptcy unless the debtor takes affirmative steps to resolve them. *See, e.g.*, *In re Heritage Highgate, Inc.*, 679 F.3d 132, 144-45 (3d Cir. 2012). Thomas tried to do so through a lawful procedure known as "lien stripping." *Id.* at 144. He did this in two phases.

4

In phase one, on June 17, 2004, Thomas filed, among other things, amended schedules, an amended bankruptcy plan, and a cramdown motion relating to the 1618 and 1620 Properties. The purpose of the motion was to "cram" the value of the City's secured claims "down" to match the fair market value of the Properties. *See* 11 U.S.C. §§ 506(a), 1322(b), 1325(a)(5)(B). Thomas certified that he mailed the cramdown motion and a separate notice document to the City's Municipal Services Building. The notice informed the City that Thomas had filed a "Motion to cra[m]down . . . Reducing the value of your claim," and that there was a hearing scheduled for August 19, 2004. SA31-32. The notice also warned the City: "Your rights may be affected. You should read these papers carefully and discuss them with your attorney . . . ." SA31.

On July 17, 2004, with the cramdown motion still pending, Thomas submitted proof of claims on behalf of the City relating to the 1251 and 1618 Properties. Thomas indicated that the City had claims on both Properties based on unpaid taxes and other bills, and that both claims were secured by the Properties. Thomas certified that he mailed the claim relating to the 1251 Property to the City's Municipal Services Building.

The City filed a separate claim relating to the 1618 Property. The signature on the City's claim is dated July 20, 2004, but the document's electronic stamp from the Bankruptcy Court's online filing system is dated August 26, 2004. The City's claim indicated that Thomas owed almost $20,000 in taxes.

The City did not appear at the August 19, 2004 hearing on Thomas's cramdown motion or otherwise oppose the motion. The Bankruptcy Court granted the motion on August

5

26, 2004. Based on that ruling, Thomas's debts to the City were bifurcated into secured and unsecured components.

In phase two of the lien-stripping strategy, Thomas persuaded the Chapter 13 Trustee and the Bankruptcy Court that he could resolve his debts through a payment plan that covered the City's secured claims and "stripped" the remaining, unsecured portions of the liens. As part of that process, Thomas filed amended bankruptcy plans in September and November 2004. There is no evidence that he served the plans on the City.

On January 11, 2005, the Bankruptcy Court scheduled the final confirmation hearing for later that month. The court mailed the scheduling order to the City at the Municipal Services Building and the City's Law Department. Following the hearing, the Bankruptcy Court confirmed Thomas's third amended bankruptcy plan on February 22, 2005. The court mailed the confirmation order to the City at the same two locations.

Thomas paid more than $23,000 pursuant to the confirmation order. The Bankruptcy Court issued a discharge order on September 3, 2009. The clerk mailed copies of the discharge order to the City. There was no appeal of the discharge order.

**B.**

Unbeknownst to Thomas, the City had transferred some of the liens on the 1251 Property prior to the Chapter 13 proceedings. In late 2005, while Thomas was making payments pursuant to the confirmed plan, a bank filed a petition seeking a sheriff's sale of the 1251 Property in

6

Philadelphia County's Court of Common Pleas. Thomas notified the bank of the Bankruptcy Court's confirmation order, and the bank convinced the state court to hold the proceedings in abeyance until after the discharge order in 2009. Following the discharge, the bank resumed the collection process.

In 2012, Thomas challenged the bank's efforts by initiating a lawsuit against several parties, including the City and a different bank that had taken possession of the liens on the 1251 Property. The City argued in a motion to dismiss that the federal Tax Injunction Act and Pennsylvania's Municipal Claims and Tax Liens Act barred the relief Thomas sought. The City did not claim that it lacked notice of the bankruptcy or make any arguments sounding in due process. In response, the District Court construed Thomas's suit as a motion to reopen the bankruptcy proceedings and transferred the matter to the Bankruptcy Court.

In an adversarial proceeding relating to Thomas's Chapter 13 case, the Bankruptcy Court construed Thomas's claims against the City as alleging violations of the confirmation order. The City largely rested on the dismissal motion that it filed with the District Court. There was no mention of notice or due process.

In a 2013 ruling, the Bankruptcy Court sided with the City and the other defendants. The court's principal holding was that the operative bankruptcy plan did not provide for the discharge of some of the liens on the 1251 Property. Consequently, the court held, the liens passed through the bankruptcy unaffected. The Bankruptcy Court also asserted that the City "cannot be bound by the Confirmed Plan due to lack of notice" under the Due Process Clause. *In re Thomas*,

7

497 B.R. 188, 206 (Bankr. E.D. Pa. 2013).  Thomas failed to perfect an appeal of that ruling.

## C.

Beginning in 2014, the City commenced collection actions in Philadelphia County relating to the 1618 and 1620 Properties.  In 2015, the state court appointed a sequestrator to collect rents relating to the 1618 Property and authorized a sheriff's sale of the 1620 Property.  The 1620 Property was sold to a third party in July 2015.

Thomas sued in federal court again.  He sought injunctive relief and damages relating to alleged violations of the 2009 discharge order.  Without actually contending that there was a lack of notice, the City argued that claim preclusion applied to the Bankruptcy Court's 2013 notice ruling.  The District Court disposed of Thomas's allegations on that basis.

We vacated the District Court's decision.  Claim preclusion did not apply because Thomas's claims relating to the 1618 and 1620 Properties were not identical to the ones the Bankruptcy Court resolved prior to the discharge order relating to the 1251 Property.  Issue preclusion did not apply because, among other reasons, Thomas was not given a fair opportunity to litigate notice in the prior proceedings.  We therefore remanded the case so that the notice issue could be addressed on the merits in the context of Thomas's pending claims relating to the 1618 and 1620 Properties.

## D.

On remand, the City admitted at a July 2017 status conference that it had notice of the bankruptcy.  The City also

8

informed the District Court that, in June 2015, a sheriff's sale on the 1618 Property had been stayed and the 1620 Property had been sold. Following the conference, the City moved for judgment on the pleadings based on the argument that there is no private cause of action for alleged violations of the bankruptcy discharge. As before, the City did not press the due process issue that the Bankruptcy Court had raised *sua sponte* in 2013.

In August 2017, the District Court held an evidentiary hearing on Thomas's pending claims. The parties stipulated that the City had notice of the 2004 bankruptcy proceedings. In light of that stipulation, at the suggestion of the District Court, the City agreed to dismiss the state-court collection action relating to the 1618 Property. The City refused to yield with respect to the 1620 Property based on arguments relating to post-confirmation unpaid taxes. Following the hearing, the District Court denied the City's motion for judgment on the pleadings and held the City in civil contempt for violating the discharge order.

We vacated the District Court's contempt judgment on jurisdictional grounds and remanded. *See Thomas*, 759 F. App'x at 112. In doing so, we explained that any remedy for the City's "dereliction" had to come from the Bankruptcy Court. *Id.*

**E.**

Following the second remand, the District Court transferred the matter back to the Bankruptcy Court, which addressed Thomas's contempt allegations in a new adversarial proceeding. In a motion for summary judgment, the City once again conceded that it had general notice of the bankruptcy

prior to entry of the discharge order. The City also acknowledged that it had filed two proofs of claim prior to that order. The City nevertheless argued that contempt was inappropriate because the confirmed plan was not binding due to lack of notice, the City had reasonably relied on the Bankruptcy Court's 2013 *sua sponte* notice ruling, and certain of the liens passed through the bankruptcy unaffected.

The Bankruptcy Court credited each of the City's arguments and declined to hold the City in contempt. *See In re Thomas*, 626 B.R. 804, 808 (Bankr. E.D. Pa. 2021). The District Court affirmed. *See Thomas v. City of Philadelphia*, 658 B.R. 104, 115-16 (E.D. Pa. 2024). Thomas timely appealed.

## II.

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(b). The District Court had jurisdiction pursuant to 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. We review the Bankruptcy Court's factual findings for clear error and conduct de novo review of legal conclusions. *In re Smith*, 102 F.4th 643, 650 n.13 (3d Cir. 2024).

## III.

Thomas met his burden under the traditional standards governing compensatory civil contempt with respect to the 1618 Property. The narrow alternative constitutional ruling in the Bankruptcy Court's 2013 decision was wrong. The City has never defended that ruling with evidence. Nor could it. Because the City had actual notice of the discharge order and opportunities to challenge it, there was no fair ground for the

City to try to extend the ruling beyond the 1251 Property to which it applied. The City's approach ignored our case law prohibiting self-help. That strategy was anathema to the historic and important function of the discharge, as well as to the finality that is crucial to the operation of the Bankruptcy Code. All that remains to be done on remand is develop an evidentiary record to facilitate determinations regarding the scope of the City's violation and the calculation of appropriate compensatory damages relating to the 1618 Property.

We reach a different conclusion with respect to the 1620 Property. Thomas presented no evidence that he met his payment obligations under the confirmation order with respect to that Property, and therefore failed to meet his burden of establishing that the City violated the injunction. The gap in proof left the City with an objectively reasonable argument that the injunction did not apply to that debt. Therefore, civil contempt is not appropriate as to the 1620 Property.

**A.**

Discharge orders are too important to the modern bankruptcy process to be casually ignored by creditors. The concept of discharging debts dates back hundreds of years. *See* 4 Anne, c.17, § 7 (1705). At English common law, the discharge was a means of making "full amends" to debtors for the "rigor and severity" of bankruptcy practice at the time, which required debtors to make disclosures "upon pain of death." 2 W. Blackstone, Commentaries on the Laws of England 482 (1768). Bankruptcy practice in the United States has become less severe over time, at least in some ways, but

11

Congress provided for a debtor's discharge in each version of the bankruptcy code. *See* 11 U.S.C. §§ 524, 1328.[2]

The teeth of a discharge order is an injunction that prohibits efforts to collect debts within the order's scope. *See* 11 U.S.C. § 524(a)(2)-(3). Courts have the authority, and an obligation, to enforce these injunctions. *See id.* § 105(a). This includes the imposition of coercive and compensatory contempt sanctions based on the "traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019); *see also* Judiciary Act of 1789, Pub. L. No. 1-20, § 17, 1 Stat. 73, 83 (1789); 4 W. Blackstone, Commentaries on the Laws of England 282 (1768) ("For laws, without a competent authority to secure their administration from disobedience and contempt, would be vain and nugatory.").

These traditional standards require the proponent of a civil-contempt motion to establish three elements by clear and convincing evidence: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). Where a debtor alleges that a creditor violated a discharge order, the third civil-contempt element requires the debtor to demonstrate that there

---

[2] *See, e.g.*, Bankruptcy Act of 1800, Pub. L. No. 6-19, § 34, 2 Stat. 19, 30-31 (1800); Bankruptcy Act of 1841, Pub. L. No. 27-9, § 4, 5 Stat. 440, 443 (1841); Bankruptcy Act of 1898, Pub. L. No. 55-541, § 14, 30 Stat. 544, 550 (1898); Act of Oct. 19, 1970, Pub. L. No. 91-467, § 3, 84 Stat. 990, 991 (1970); Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 524, 92 Stat. 2549, 2592 (1978).

was "*no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart*, 587 U.S. at 557; *Fox v. Cap. Co.*, 96 F.2d 684, 686 (3d Cir. 1938); *see also Sugar v. Burnett*, 130 F.4th 358, 374 (4th Cir. 2025) (applying *Taggart* to Chapter 13 discharge order). The standard is "generally an *objective* one." *Taggart*, 587 U.S. at 561. Subjective good faith is of exceedingly limited relevance. *See id.* at 561-62; *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 590 n.18 (3d Cir. 2010); *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

**B.**

Thomas met his burden on the first and second elements of civil contempt. The Bankruptcy Court's discharge order was a "valid order" that applied to the City, and the City "had knowledge of the [discharge] order." *Marshak*, 595 F.3d at 486. The City's contemporaneous notice of the confirmation and discharge orders afforded it multiple opportunities to make a timely due-process claim. Having squandered that opportunity, the City was not free to disregard the application of the discharge to the 1618 Property in state-court proceedings and then collaterally attack the injunction in response to Thomas's contempt allegations. In addition to that procedural error, the City's actual notice of the injunction and other court filings, coupled with selective participation in the bankruptcy, renders its constitutional arguments meritless.

**1.**

In 2019, we remanded this case so that the Bankruptcy Court could determine whether there would be "any remedy for the City's dereliction." *Thomas*, 759 F. App'x at 112. In the fresh contempt proceeding that followed, the City argued that the discharge order did not apply to the 1618 and 1620

13

Properties because it did not receive due process in the bankruptcy. The City's constitutional attack was procedurally defective.

With few exceptions that are not relevant here, we have essentially forbidden a litigant from violating a final injunction and then challenging the injunction's validity in the resulting contempt proceedings. *See Marshak*, 595 F.3d at 486; *see also Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990). This "long-standing rule" favors recourse to the courts over the City's flawed self-help approach. *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948); *see also Oriel v. Russell*, 278 U.S. 358, 364-65 (1929).

In this context, "strong policy reasons" support the general prohibition on collateral attacks as a defense to civil contempt. *Halderman*, 673 F.2d at 637. Requiring the party subject to the injunction to bring a legal challenge before intentionally violating the final order ensures notice to other interested parties, adversarial testing, and a fair opportunity for unbiased judicial resolution. *See id.* Discouraging post-judgment collateral attacks also mitigates the "prospect of perpetual relitigation" of an injunction. *Id.* That consideration is particularly compelling in this case based on the significance of the discharge procedure and the finality maxim that "anchors bankruptcy law." *In re Smith*, 102 F.4th at 655; *In re Fesq*, 153 F.3d 113, 119 (3d Cir. 1998) ("[I]f courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated."). Therefore, under the unique circumstances presented—including the City's timely, actual notice of the confirmation and the discharge—the City was foreclosed from collaterally attacking the final § 524(a) injunction in Thomas's contempt proceedings.

**2.**

Because of the City's actual notice, the City's constitutional challenge to the discharge order was also meritless. *See United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The Due Process Clause of the Fourteenth Amendment applies to "person[s]." U.S. Const. amend. XIV, § 1. The Bankruptcy Court took for granted that this provision covers a municipal corporation like the City, which is a subdivision of the Commonwealth. *See Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003). The Clause's reach in this case is not as obvious to us. *See Pennsylvania v. Riley*, 84 F.3d 125, 130 n.2 (3d Cir. 1996); *see also South Dakota v. DOI*, 665 F.3d 986, 990 n.4 (8th Cir. 2012); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1090 (6th Cir. 1990). We have no doubt, however, that the City received all of the notice that any "person" was due under the Constitution.

The Constitution "requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Constitutional due process is not governed by the thicket of statutory provisions and rules that establish procedural notice requirements in bankruptcy proceedings. *See Espinosa*, 559 U.S. at 272. There are no bright-line rules.

The City conceded in the Bankruptcy Court, the District Court, and this Court that it was aware of the "pendency of the

15

action" prior to entry of the discharge order. *Mullane*, 339 U.S. at 314. The City's concessions of actual notice were unavoidable. The Bankruptcy Court's docket sheet demonstrates attempts to mail at least 11 filings to the City. Among those filings were Thomas's claim forms, scheduling orders relating to Thomas's cramdown motion and confirmation hearings, the confirmation order, and the discharge order.[3] Notice of the final confirmation hearing, the confirmation order, and the discharge were each mailed to the City's preferred service address at the Law Department.

The City's actual notice of the confirmation and discharge, which it did not deny in the Bankruptcy Court, provided adequate opportunities to bring a timely constitutional challenge to either or both of those orders. *See Halderman*, 673 F.2d at 637 ("[I]t cannot be said that this is a case in which no other route to appellate review except self-help was available to the contemnors."). The City filed no such challenges. At no point prior to the Bankruptcy Court's 2013 ruling did the City suggest any problems with notice or Thomas's service. For example, the claim forms filed by the City in 2004 and 2006 had a box for the City to indicate that it

---

[3] The 11 mailings were: (1) notice of the first creditors' meeting; (2) the Bankruptcy Court's initial dismissal of Thomas's petition; (3) the Trustee's motion to reinstate the proceedings; (4) the Bankruptcy Court's reinstatement order; (5) Thomas's proof of claim relating to the 1251 Property; (6) Thomas's cramdown motion, which specifically identified the 1618 and 1620 Properties; (7) a notice of the hearing on Thomas's cramdown motion; (8-9) two scheduling orders relating to the confirmation hearing; (10) the confirmation order; and (11) the discharge order.

had "never received any notices from the bankruptcy court in this case." SA40, 42. The City did not check that box on either form. The selective participation in the proceedings demonstrated by the City's own filings largely dooms the suggestion that notice was constitutionally defective. *See In re Congoleum Corp.*, 149 F.4th 318, 333 (3d Cir. 2025).

On appeal, the City focuses much of its defense on notice of Thomas's cramdown motion and the Bankruptcy Court's ruling on that motion. Not a good strategy. The operative document in the contempt proceedings was the discharge order rather than earlier filings in the bankruptcy. To the extent the cramdown motion is relevant, the City "acknowledge[d]" in the Bankruptcy Court—and fails to persuasively dispute here—that "it had notice of the Cramdown Motion and did not respond to it." *In re Thomas*, 626 B.R. at 816 n.11. Thomas mailed a notice of the hearing on the cramdown motion to the Municipal Services Building, but the City did not show up.

Likewise, the Bankruptcy Court used understated terms to correctly point out that, "having received notice of an upcoming confirmation hearing, the City could (and maybe should have) have taken steps to ascertain what was in the proposed plan." *In re Thomas*, 626 B.R. at 820-21. The City sat out the confirmation hearing too. *See In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989) ("The general rule is that the acceptance of the plan by a secured creditor can be inferred by the absence of an objection."). The City "was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990). It "ha[d] notice that its claim[s] might be affected and ignored the ensuing

17

proceedings to its peril." *In re Blendheim*, 803 F.3d 477, 498 (9th Cir. 2015).

Now seeking to avoid that peril, the City contends that a due process violation resulted from Thomas's mailing of the cramdown papers to the Municipal Services Building instead of the City's Law Department. In light of the evidence of actual notice, including with respect to the cramdown motion, this contention borders on disingenuous. *See In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."). Critically, the City offered no evidence to the Bankruptcy Court—such as a sworn declaration setting forth facts— demonstrating that the City did not actually receive any particular documents.

The City also complains that Thomas sometimes used what it says is the wrong street address for the Municipal Services Building. The docket sheet reveals that the Bankruptcy Court first used the allegedly incorrect address and that the court continued to do so later in the proceedings. *See* ECF No. 20 at 2, *In re Thomas*, No. 04-10175 (E.D. Pa. Bankr. 2004). Thomas's use of an address deemed relevant by the court was reasonably calculated to provide adequate notice under the circumstances. And there is no question that the Bankruptcy Court mailed notice of the confirmation hearing, the confirmation order, and the discharge order to the Law Department and to the street address for the Municipal Services Building that the City does not dispute. So we reject the City's efforts to constitutionalize its street address.

18

Having lost sight of the operative § 524(a) injunction relevant to the contempt proceedings, the City's next line of defense is to adopt the Bankruptcy Court's emphasis on Thomas's failure to mail copies of his bankruptcy plans to the City. This approach fares no better. Our divided decision in *In re Mansaray-Ruffin* does not support the Bankruptcy Court's incorporation of bankruptcy procedure into the Fourteenth Amendment. *See* 530 F.3d 230 (3d Cir. 2008). *Mansaray* involved distinctive circumstances not present in this case: a dispute over the validity of a lien, rather than Thomas's lien stripping, secured by property that was the debtor's homestead, which is not true of the 1618 and 1620 Properties. *Id.* at 242-43; *see also In re Scarborough*, 461 F.3d 406, 409-10 (3d Cir. 2006) (discussing 11 U.S.C. § 1322(b)(2)). *Mansaray*'s holding is limited by those features and the adversarial-proceeding procedures that they implicated. Any dicta in *Mansaray* suggesting more generally that a violation of bankruptcy procedures constitutes a *per se* due process violation did not survive the Supreme Court's decision in *Espinosa*. *See* 559 U.S. at 272; *see also In re Smith*, 102 F.4th at 656 (describing "our own precedent favoring finality over a plan's compliance with the Bankruptcy Code"); *In re Semcrude, L.P.*, 728 F.3d 314, 322-23 (3d Cir. 2013). In light of all of the other forms of notice and selective participation by the City, service defects relating to the bankruptcy plans did not violate due process.

The older cases cited by the City are equally unavailing, as they establish little more than the proposition that general awareness of a bankruptcy, such as through publication notice, did not satisfy the due process rights of certain creditors in those cases. *See City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296 (1953). Because due process analysis

19

is inherently fact specific, and this case is different, our constitutional holding does not place the type of burden on creditors that concerned the *Harbor Tank* panel. *See* 385 F.2d at 115. The City (1) conceded general notice of the bankruptcy; (2) selectively participated in the proceedings by filing claims but failing to attend important hearings; and (3) had actual notice of the confirmation and discharge orders as well as other parts of the case. Based on those considerations, we hold that there was no due process violation.

## C.

We now turn to the third contempt element, which presents the closest question in the appeal. We hold that there is no fair ground for doubt that the City "disobeyed the [discharge] order" with respect to the 1618 Property. *Marshak*, 595 F.3d at 486; *see also Taggart*, 587 U.S. at 562. On the other hand, Thomas failed to meet his burden of demonstrating that a violation occurred as to the 1620 Property.

Starting with the 1618 Property, our contempt holding is based on the collective force of four considerations. First, the City had no reasonable basis to violate the discharge order on the theory that a due process violation had occurred earlier in the case. The evidence of the City's actual notice dating back to 2004 is overwhelming. Consistent with the weight of the proof, the City did not even make constitutional arguments until after the Bankruptcy Court did so on its own. And the City's "*actual* notice . . . . more than satisfied [its] due process rights." *Espinosa*, 559 U.S. at 272.

Second, even ignoring that the Bankruptcy Court's reasoning was incorrect, the narrow alternative ruling was an

20

inexcusably thin reed. As we pointed out before, the 2013 decision arose in the context of allegations relating to a different property based on arguments that nobody had made. *See Thomas*, 682 F. App'x at 177. Ironically, given the City's current position on notice, it was Thomas who "lacked a full and fair opportunity to litigate the issue in that [2013] proceeding." *Id.* The City crossed the line between arguably-acceptable reliance on the court's dicta and civil contempt by trying to stretch the ruling to apply to the 1618 Property.

Third, the City's unilateral extension of the ruling was made worse by the fact that the City only pressed the due process argument in court in response to Thomas's contempt allegations. Longstanding case law prohibited that kind of collateral attack to an applicable and otherwise-final injunction. *See, e.g.*, *Halderman*, 673 F.2d at 637; *see also Howat v. Kansas*, 258 U.S. 181, 190 (1922) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, . . . its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.").

Fourth, the City's reliance on the Bankruptcy Court's 2013 ruling is, at most, suggestive of subjective good faith. That mindset is of no help to the City right now. *See Taggart*, 587 U.S. at 561. On remand, the City may seek to address whether and to what extent good faith is relevant to the calculation of damages. When the Supreme Court suggested in *Taggart* that good faith can bear on the appropriate civil contempt sanction, the Court cited a case that is more relevant to coercing compliance than the compensation that Thomas seeks. *See id.* at 562 (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987)). If good faith

21

is relevant to compensatory contempt sanctions, which we do not resolve in this opinion, and if the City proves that it acted in good faith with evidence rather than unsworn claims in briefs, it may still be hard for the court to ignore the way the City's lawyers repeatedly failed to substantiate the claimed lack of notice and then immediately abandoned the contemptuous debt-collection action when pressed by the District Court in 2017. In any event, what matters in this appeal is that good faith alone is not a meritorious response to Thomas's showing on the contempt elements. The City's violation of the discharge resulted from a conscious choice that was "not technical or inadvertent." *Woods*, 28 F.3d at 399; *see also Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 149 (3d Cir. 1994). Therefore, Thomas met his burden of establishing contempt as to the 1618 Property.

We reach a different conclusion with respect to the 1620 Property, which illustrates the proper application of the "fair ground of doubt" standard from *Taggart*. Although Thomas's confirmed plan addressed at least some of the City's liens on the 1620 Property, the Trustee's pre-discharge report indicated that Thomas did not make all of the payments required to strip those liens. During the contempt proceedings, Thomas failed to present any proof that the report was inaccurate or that he made all of the necessary payments. In contrast to the unreasonable justification proffered by the City for the violation relating to the 1618 Property, Thomas's evidentiary deficiency left the City with an objectively reasonable argument that seeking to collect debts relating to the 1620 Property did not violate the discharge order because those liens passed through the bankruptcy unaffected. Thus, we agree with the Bankruptcy Court and the District Court that Thomas

22

is not entitled to contempt damages with respect to the 1620 Property.

## IV.

In sum, we hold that the City had constitutionally adequate notice of the bankruptcy proceedings, and that Thomas established that the City engaged in civil contempt with respect to the 1618 Property. This is an atypical case with a peculiar procedural history, and our contempt holding is confined to the facts at issue. Based on those facts, we will affirm in part, vacate in part, and remand to the District Court with instructions to remand to the Bankruptcy Court for purposes of determining the scope of the violation and calculating damages after developing an evidentiary record consistent with the concerns raised in this opinion.

*Appellant pro se*
Milton Thomas, Sr. [Argued]

*Counsel for Appellee*
Jennifer MacNaughton
Adam R. Zurbriggen [Argued]
City of Philadelphia Law Department

*Court-Appointed Amicus Curiae*
Rodney S. Roberts, Jr.
Claire R. Cahill [Argued]
Williams & Connolly